IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-71-JG

| | |
|---|---|
| DOROTHY LOCKLEAR GOINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Dorothy Locklear Goins ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 17, 20). Both filed memoranda in support of their respective motions. (D.E. 18, 21). With the consent of the parties, this case was reassigned to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (*See* D.E. 16, 19; Text Ord. dated 29 Oct. 2015). For the reasons set forth below, the Commissioner's motion will be allowed, plaintiff's motion will be denied, and the final decision of the Commissioner will be affirmed.

## BACKGROUND

**I.    CASE HISTORY**

Plaintiff filed an application for DIB on 9 September 2011, alleging a disability onset date of 16 June 2011. Transcript of Proceedings ("Tr.") 20. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 20. On 27 September

2013, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 35-75. The ALJ issued a decision denying plaintiff's claim on 11 December 2013. Tr. 20-28. Plaintiff timely requested review by the Appeals Council. Tr. 14-16. On 6 February 2015, the Appeals Council denied the request for review. Tr. 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 10 April 2015, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C. § 405(g). (*See* Mot. to Proceed *In Forma Pauperis* (D.E. 1); Ord. Granting Mot. (D.E. 6); Compl. (D.E. 7)).

## II. STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

2
Case 7:15-cv-00071-JG   Document 23   Filed 09/27/16   Page 2 of 14

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]
>
> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.
>
> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1).

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ'S FINDINGS

According to the date of birth on various documents of record (*see, e.g.*, Tr. 83), plaintiff was 56 years old on the alleged onset date of disability (16 June 2011) and 58 years old on the date of the hearing (27 September 2013). Plaintiff testified that she has an associate degree in early childhood. Tr. 46. The ALJ found that plaintiff has past relevant work as a teacher's aide. Tr. 28 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 22 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: diabetes mellitus, obesity, and De Quervain's tenosynovitis.[4] Tr. 22 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listings. Tr. 22 ¶ 4.

The ALJ next determined that plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[5] subject to the following limitations:

> [The claimant] can frequently climb ramps and stairs; can occasionally climb ladders, ropes and scaffolds; can occasionally kneel, crouch, and crawl; can frequently, but not continuously, handle and finger with the bilateral upper extremities; and can frequently push and pull with the bilateral lower extremities.

---

[4] De Quervain's tenosynovitis has been described as "a painful condition affecting the tendons on the thumb side of [the] wrist." Mayo Clinic, Diseases and Conditions, De Quervain's tenosynovitis, http: //www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/CON-20027238?p=1 (last visited 26 Sept. 2016).

[5] The regulation provides, in part, that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

4

Tr. 23 ¶ 5. At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a teacher's aide, DOT no. 249.367-074, as actually and normally performed. Tr. 28 ¶ 6. The ALJ therefore concluded that plaintiff had not been under a disability from the alleged onset of disability, 16 June 2011, through the date of his decision, 11 December 2013. Tr. 28 ¶ 7.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## **DISCUSSION**

Plaintiff contends that the ALJ's decision should be reversed and that this case should be remanded for a new hearing on the principal grounds that the ALJ failed to properly assess the opinions of two medical sources: treating family nurse practitioner Denene Smith ("Nurse Smith") of Trinity Urgent Care and nonexamining consulting physician Robert N. Pyle, M.D. The court finds no reversible error.

### **I.    APPLICABLE LEGAL STANDARDS**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), . . . an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well

supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), including nurse practitioners. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. § 404.1513(d)(1) (listing nurse practitioners among "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the

weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 404.1527(c), (e); *Casey v. Colvin*, No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. § 404.1527(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

## II. OPINIONS OF NURSE SMITH

On 14 March 2013, Nurse Smith completed a medical source statement entitled "Diabetes Mellitus Questionnaire" ("questionnaire"). Tr. 438-41. As summarized by the ALJ, Nurse Smith found as follows:

> She noted that the claimant had symptoms of fatigue, difficulty thinking/concentrating, extremity pain and numbness, vascular disease/leg cramping, headaches, and episodic vision blurriness. She noted the claimant's medication for extremity and nerve pain caused dizziness, grogginess, and sluggishness; and the Lortab, which was used for pain caused grogginess. She assessed that the claimant could walk two (2) city blocks without rest; could sit continuously for twenty (20) minutes at one time; stand for five (5) minutes at one time; sit, stand and walk for less than two (2) hours in an 8-hour workday with a need to shift positions at will; take unscheduled breaks every thirty (30) minutes to an hour for fifteen (15) minutes; and will need to elevate her legs to waist level if possible 90% of the day. She could occasionally lift less than ten (10) pounds; with significant limitations in repetitive reaching, handling and fingering; and must avoid extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents, cleaners and chemicals. She could be anticipated to be absent from work for more than twice a month (Exhibit 16F).

Tr. 26 ¶ 5.

The ALJ gave "little weight" to the opinions of Nurse Smith. Tr. 26 ¶ 5. He stated three reasons:

9

> The undersigned affords little weight to the opinion of Nurse Smith ([Exhibit] 16F) for the following reasons: 1) it is not supported by any objective medical evidence; 2) it is not consistent with the record as a whole; and 3) she is not an acceptable medical source.

Tr. 26 ¶ 5.

Plaintiff argues that the ALJ did not provide a sufficient explanation for rejecting Nurse Smith's opinions. The court disagrees.

Each of the reasons cited by the ALJ for discounting Nurse Smith's opinions are factors properly considered in evaluating medical source opinions. Specifically, as previously discussed, medical source opinions may be discounted if objective medical evidence, as well as other relevant evidence, is not presented to support the opinions and the opinions are inconsistent with the record as whole. *See* 20 C.F.R. § 404.1527(c)(3) (supportability), (c)(4) (consistency). Medical source opinions may also be discounted when the source is a non-acceptable medical source, such as a nurse practitioner. *See* 20 C.F.R. § 404.1513(d)(1); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

In addition, substantial evidence supports each reason cited by the ALJ. There is, of course, no dispute that Nurse Smith is a nurse practitioner. With respect to the lack of supporting objective medical evidence, the questionnaire itself sets forth no such evidence. Indeed, there is no evidence that Nurse Smith ever saw plaintiff before she completed the questionnaire. Nor is there any office visit note for the date of the questionnaire. The record therefore does not show the basis upon which Nurse Smith grounded the opinions she expresses. This deficiency alone arguably justifies the attribution of little weight to Nurse Smith's opinions.

The record documents that after completion of the questionnaire, Nurse Smith saw plaintiff on only three occasions: 20 June 2013, 23 July 2013, and 4 September 2013. Tr. 462, 467, 468. The findings she made at these visits do not substantiate that plaintiff had limitations

10

of the severity she found in the questionnaire. For example, at each appointment, Smith noted that plaintiff had a good range of motion in her extremities, and her gait was normal, except on 23 July 2013, when it was noted as being slow. Tr. 462, 467, 468. Plaintiff was also encouraged at each appointment to exercise at least five days a week. Tr. 462, 467, 468. In any event, because these visits postdated the questionnaire, their relevance to the opinions expressed by Nurse Smith is open to question. Notably, the seven other visits plaintiff had at the facility where Nurse Smith worked, Trinity Urgent Care, also fail to support the findings by Nurse Smith. Five were for prescribed massages for pain, one for fasting labs, and one for an allergy injection. Tr. 460-61, 464-66, 470-71.

In addition, substantial evidence supports the ALJ's determination that Nurse Smith's opinions are not consistent with the record as whole. For example, physician Frederick Talip, M.D., who saw plaintiff on referral from her primary care provider for multiple joint pain between May 2012 and May 2013, repeatedly found that plaintiff was able to do regular daily activities. Tr. 389, 393, 397, 401, 405; *see* Tr. 25 ¶ 5 (ALJ's discussion of Dr. Talip's records). Dr. Talip also noted at each of plaintiff's appointments that she had a full range of motion and a good grip in her hands, a full range of motion in her wrists and shoulders, and a fair range of motion in her lumbar spine. Tr. 391, 394-95, 398-99, 402, 406. As a further example, providers at Pinehurst Surgical Clinic, where plaintiff was treated from 11 July 2012 to 26 June 2013, regularly encouraged plaintiff to start a walking plan and to walk 30-45 minutes daily, if tolerated. Tr. 426, 432, 434; *see* Tr. 25-26 ¶ 5 (ALJ's discussion of records from Pinehurst Surgical Clinic).

11

Case 7:15-cv-00071-JG   Document 23   Filed 09/27/16   Page 11 of 14

The court concludes that the ALJ's assessment of the opinions of Nurse Smith is based on proper legal standards and supported by substantial evidence.[6] The court accordingly rejects plaintiff's challenge to it.

### III. OPINIONS OF DR. PYLE

Dr. Pyle completed the disability determination explanation form on reconsideration dated 17 May 2012. Tr. 84-91. Dr. Pyle found that plaintiff had the RFC to perform work at the medium exertional level without any nonexertional limitations. Tr. 89-90. Based on this RFC, Dr. Pyle found plaintiff capable of performing her past relevant work in teaching, as actually performed. Tr. 90-91. Such work is identified in the explanation form as teacher assistant, DOT no. 099.327-010, and being at the light exertional level. Tr. 90.

The ALJ assigned "great weight" to the opinions of Dr. Pyle "because they are consistent with other opinions and the record as a whole." Tr. 27 ¶ 5. Plaintiff argues that the ALJ's attribution of great weight to Dr. Pyle's opinions contradicts the ALJ's own analysis of the medical evidence and is not supported by the record, in part, because he rendered his opinions before much of the relevant medical evidence was developed.

While it is true that the ALJ found plaintiff to have a more limited RFC than Dr. Pyle, the ALJ's analysis of the medical evidence is consistent with that of Dr. Pyle in the sense that the ALJ determined, as did Dr. Pyle, that plaintiff retained the RFC to perform her past relevant work in teaching, which they both found to be at the light exertional level albeit assigning different DOT codes. This is manifestly a significant consistency between the ALJ's and Dr. Pyle's analyses.

---

[6] The absence of error in the ALJ's assessment of Nurse Smith's opinions moots plaintiff's contention that crediting any one of several opinions of hers would have rendered plaintiff unable to perform her past relevant work in teaching and that Rule 202.06 in the Medical-Vocational Guidelines, 20 C.F.R., pt. 404, subpt. P, app. 2, would have directed a conclusion of "disabled" (notwithstanding plaintiff's having been found to suffer from nonexertional impairments, *see* Medical-Vocational Guidelines § 200.00(e)(2)).

Substantial evidence supports the determination that plaintiff retains the RFC to perform her past relevant work in teaching. In addition to evidence reviewed herein, significant supporting evidence is included in the ALJ's comprehensive review of the medical evidence and plaintiff's testimony in his decision. *See* Tr. 23-28 ¶ 5. Thus, contrary to plaintiff's argument, there is support in the record for attribution of great weight to the shared determination by the ALJ and Dr. Pyle that plaintiff can perform her past relevant work in teaching. Stated differently, substantial evidence supports the ALJ's determination that Dr. Pyle's opinions are consistent with the record as a whole with respect to the opinion that plaintiff is able to perform her past work in teaching.

Having said that, there clearly are deficiencies in the ALJ's assessment of Dr. Pyle's opinions. For example, Dr. Pyle's opinion that plaintiff can perform the full range of medium work obviously conflicts with the ALJ's determination that she can perform only a limited range of light work. The ALJ does not reconcile this inconsistency with his attribution of great weight to Dr. Pyle's opinions. In addition, although the ALJ found Dr. Pyle's opinions consistent with other opinions of record, there do not appear to be any other opinions of record that are consistent with Dr. Pyle's. The ALJ also did not identify the evidence of record with which he found Dr. Pyle's opinions consistent.

Nonetheless, plaintiff has failed to show that the deficiencies in the ALJ's assessment of Dr. Pyle's opinions were harmful. Because the ALJ found plaintiff to have a more restrictive RFC than Dr. Pyle, plaintiff has not demonstrated that if the ALJ had attributed less weight to Dr. Pyle's opinions, it is reasonably possible that he would have reached a different outcome on the issue of disability or, for that matter, even on the RFC determination. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396,

409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n. 7, 7 (M.D.N.C. 14 Aug. 2013); *Presnell v. Colvin*, No. 1:12–CV–299–FDW, 2013 WL 4079214, at *6 (W.D.N.C. 13 Aug. 2013); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an error is harmless when, among other circumstances, the ALJ would have reached the same result absent the error). Moreover, the deficiencies in the ALJ's assessment of Dr. Pyle's opinions, although interjecting some ambiguity into the ALJ's analysis, do not preclude meaningful review of the ALJ's decision by the court, as set out herein. For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's assessment of Dr. Pyle's opinions.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's motion (D.E. 20) for judgment on the pleadings be GRANTED, plaintiff's motion (D.E. 17) for judgment on the pleadings be DENIED, and the Commissioner's final decision be AFFIRMED. The Clerk is DIRECTED to close this case.

SO ORDERED, this 27th day of September 2016.

James E. Gates
United States Magistrate Judge